# United States Court of Appeals for the Federal Circuit

KERRY GROUP SERVICES INTERNATIONAL LTD.,

*Appellant*

v.

FLORIDA FOOD PRODUCTS, LLC,

*Appellee*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case No. IPR2022-00006 for U.S. Patent No. 11,071,304 B2

## REPLY BRIEF OF APPELLANT
## KERRY GROUP SERVICES INTERNATIONAL LTD.

Mark Boland
Raja N. Saliba
SUGHRUE MION, PLLC
2000 Pennsylvania Avenue, NW
Suite 9000
Washington, DC 20006
Tel: (202) 293-7060
Fax: (202) 293-7860

*Attorneys for Appellant*
*Kerry Group Services Int'l Ltd.*

January 19, 2024

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant certifies the following:

1. The full name of every party represented by me is:

   KERRY GROUP SERVICES INTERNATIONAL LTD.

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3 below) represented by me is:

   None.

3. All parent corporations and publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   KERRY GROUP PLC.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   SUGHRUE MION, PLLC:   Mark Boland, Raja N. Saliba, Michael G. Raucci, and L. Roman Rachuba

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

   None.

6. Information required under Fed. R. App. P. 26.1(b) and 26.1(c) and Fed. Cir. R. 47.4(a)(6).

   None/Not Applicable.


January 19, 2024                    /s/ Mark Boland
                                    Mark Boland
                                    *Counsel for Appellant Kerry Group Services*
                                    *International Ltd.*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ........................................................ iii

TABLE OF ABBREVIATIONS ..............................................................vi

INTRODUCTION ..............................................................................1

REPLY TO COUNTER-STATEMENT ...................................................3

ARGUMENT ....................................................................................3

    I.    FFP Improperly Discards The PTAB's New 'Voorde Alone' Theory By Recasting Actual Petition Ground I .....................................3

    II.    FFP Cannot Rectify The PTAB's Flawed 'Even if' Analysis ..............9

        A.    Ground I Cited And Relied On Hara For Initial Heat-Treating .........................................................9

        B.    The Legal Deficiencies In The PTAB's Motivation To Combine Analysis Require Reversal .......................................12

        C.    Voorde's "Teaching Away" Is Clear And Dispositive............21

        D.    FFP Concedes That Hindsight Tainted The Combination Analysis................................................................26

        E.    Specific Findings Stand Unsupported......................................27

    III.    This Court Should Not Condone The PTAB's APA Failures ............29

CONCLUSION ...............................................................................32

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Alvarez v. Lynch*,
    828 F.3d 288 (4th Cir. 2016)...............................................................26

*Anacor Pharmaceuticals, Inc. v. Iancu*,
    889 F.3d 1372 (Fed. Cir. 2018)..............................................................8

*Aqua Prods., Inc. v. Matal*,
    872 F.3d 1290 (Fed. Cir. 2017).............................................................31

*Chemours Co. FC, LLC v. Daikin Indus.*,
    4 F.4th 1370 (Fed. Cir. 2021)...............................................................24

*Corephotonics, Ltd. v. Apple Inc.*,
    84 F.4th 990 (Fed. Cir. 2023)...............................................................7

*Cutsforth, Inc. v. MotivePower, Inc.*,
    636 Fed. App'x 575 (Fed. Cir. 2016).................................... 14, 19, 30

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2016).............................................................24

*DSS Tech. Mgmt. v. Apple Inc.*,
    885 F.3d 1367 (Fed. Cir. 2018).............................................................19

*Emera-Chem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*,
    859 F.3d 1341(Fed. Cir. 2017).................................................. 8, 9, 29

*Genzyme Therapeutics Products Ltd. v. Biomarin Pharm. Inc.*,
    825 F.3d 1360 (Fed. Cir. 2016)..............................................................8

*Hardy v. City Optical Inc.*,
    39 F.3d 765 (7th Cir. 1994)...................................................................26

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
    849 F.3d 1034 (Fed. Cir. 2017).............................................................19

*In re Dembiczak*,
    175 F.3d 994 (Fed. Cir. 1999)...............................................................27

*In re Gurley*,
    27 F.3d 551 (Fed. Cir. 1994) ........................................................ 22, 23

*In re Lee*,
    277 F.3d 1338 (Fed. Cir. 2002) ............................................ 13, 19, 31

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016) .......................................................9

*In re Mouttet*,
    686 F.3d 1322 (Fed. Cir. 2012) .....................................................22

*In re NuVasive, Inc.*,
    842 F.3d 1376 (Fed. Cir. 2016) .............................................. 19, 30

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ......................................................................12

*M&K Holdings, Inc. v. Samsung Elecs. Co., Ltd.*,
    985 F.3d 1376 (Fed. Cir. 2021) ................................................ 8, 29

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
    882 F.3d 1056 (Fed. Cir. 2018) .............................................. 24, 27

*Princeton Vanguard, LLC v. Frito- Lay North Am., Inc.*,
    786 F.3d 960 (Fed. Cir. 2015) .......................................................30

*Provisur Techs., Inc. v. Weber, Inc.*,
    50 F.4th 117 (Fed. Cir. 2022) ................................................. 30, 31

*Sirona Dental Sys. GmbH v. Institut Straumann AG*,
    892 F.3d 1349 (Fed. Cir. 2018) .......................................................4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    814 F.3d 1309 (Fed. Cir. 2016) .............................................. 13, 14

*W. Va. Coal Workers Pneumoconiosis Fund v. Bell*,
    781 Fed. Appx. 214 (4th Cir. 2019) .............................................26

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) .....................................................27

*Yeda Research Dev. Co. v. Mylan Pharms Inc.*,
  906 F.3d 1031 (Fed. Cir. 2018) ............................................................30

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| '304 | U.S. Patent No. 11,071,304 (at issue) (Appx616-623) |
| APA | Administrative Procedure Act |
| Br. | Appeal Brief of Kerry or FFP in context |
| FFP | Florida Food Products (Petitioner) (Appellee) |
| FFP.Br. | Appeal Brief of Appellee, FFP (12/15/2023) |
| FWD | Final Written Decision (04/26/2023) |
| Hara | U.S. Patent No. 3,911,146 to Hiramasa Hara et al. (Ground I) |
| ID | Decision Granting Institution of IPR (04/26/2022) |
| IPR | *Inter Partes* Review |
| Kerry | Kerry Group Services Int'l Ltd. (Patent Owner) (Appellant) |
| Kerry.Br. | Appeal Brief of Appellant, Kerry (10/6/2023) |
| Kurihara | JPS48-082054 to Michihiko Kurihara et al. |
| l. | line |
| ll. | lines |
| p. | page |
| pp. | pages |
| Petition or Pet. | FFP's Corrected Petition for *Inter Partes* Review (01/25/2022) |
| POPR | Kerry's Patent Owner Preliminary Response (01/27/2022) |
| POR | Kerry's Patent Owner Response (07/19/2022) |
| POSA | person of ordinary skill in the art |
| POSITA | person of ordinary skill in the art |
| PTAB | Patent Trial and Appeal Board |
| Reply | FFP's Reply Brief (10/11/2022) |
| Sur-Reply | Kerry's Sur-Reply (11/22/2022) |
| Voorde | BE1014557A6 to Dimitri Van De Voorde et al. (Ground I) |

# INTRODUCTION

FFP's arguments in defense of the FWD only reinforce the flaws in the PTAB's conclusory determination of obviousness.

There can be no reasonable dispute that the FWD lacks reasoned analysis as to *why* the '304 claims would have been obvious based Voorde *in view of Hara*, as set forth Petition Ground I: (i) initially heating Voorde's vegetable material to *100℃+* (Hara's boiling for extracting juice); (ii) *cooling* the sterilized vegetable to Voorde's 50-60ºC (not disclosed in either reference); and (iii) then adding Voorde's *optional* starter culture at this temperature (timing not disclosed in either reference). Rather, following its summarization of the parties' positions, the PTAB sets out its conclusory obviousness determination, improperly crediting 'Voorde alone' as meeting the claimed heat-treated limitation—a conclusion outside the contours of the IPR defined by FFP's Ground I.

FFP attempts to rewrite Ground I to fit the FWD. However, FFP cannot run from its own words conceding that Voorde did not teach heat treating its vegetable material as recited in the '304 claims: "***although the step of first heating, boiling, or steaming vegetables to kill germs was not explicitly stated in the Voorde*...**," followed by "***after boiling the plant material as in Hara….*" Appx90. These are the words FFP chose for Ground I, the words that define the contours of the Petition, and the words the parties' litigated below.

1

Moreover, FFP cannot escape the fact that its proposed '***boiling as in Hara***'
modification to Voorde is contradicted by Voorde's explicit direction "***not to
excessively reduce the enzymatic and microbiological conversion processes
necessary for the conversion of nitrate into nitrite***."  Appx726(Voorde_p.7).
Initially heating Voorde's plant material by boiling (100ºC+) per Ground I is
unquestionably excessive as it would destroy the natural enzymes and microbes
Voorde relies on.  This is a classic case of the prior art "teaching away" from the
claimed invention.

Underlying these problems is the PTAB's failure to carry out a reasoned
analysis grounded in the Petition and the parties' positions, violating the APA.
There can be no serious dispute that the FWD asserted a new theory based on
'Voorde alone'—a "marked deviation" from the Petition's theory and evidence.
Further, FFP cannot rely on the PTAB's summaries of the parties' positions as
analysis or reasoning.  Glaringly, in the FWD, there is a wholesale lack of
reasoning supporting the conclusion of motivation to combine, particularly given
Voorde's teaching away.

For these reasons, and as detailed in Kerry's opening brief and below, the
PTAB's conclusion of obviousness cannot stand.

## REPLY TO COUNTER-STATEMENT

FFP opens by alleging "[t]he '304 patent discloses and claims an age-old method for preserving meat by applying a 'curing agent' that was undisputedly known in the art" (FFP.Br.1) and then spends *eleven* pages attempting to show that the '304 patent was "late to the game" of "natural" curing techniques (FFP.Br.3-13). ***But FFP fails to mention***: (1) unlike Kerry's '304 patent, the "natural" techniques of *in situ* curing and pickling that FFP discusses involved performing a nitrate-to-nitrite *conversion* on the meat; and (2) these "natural" techniques do *not* involve adding an organism to heat-treated plant material, followed by performing the nitrate-to-nitrite conversion and inactivating the organism, all before adding the resulting curing agent to the meat—the same deficiencies as Voorde and Kurihara (Kerry.Br.8-10).  Accordingly, contrary to FFP's assertion at FFP.Br.14, the solution of the '304 patent was not "***already known in the art***."  The remainder of FFP's Counter-statement is cumulative and unavailing.

## ARGUMENT

### I.  FFP Improperly Discards The PTAB's New 'Voorde Alone' Theory By Recasting Actual Petition Ground I

Faced with the facts in Kerry.Br.§_V.B at pp.33-46, FFP tries to shoehorn its Petition into the 'Voorde alone' part of the FWD (Appx18-19), but there isn't a fit.  In its Petition at Appx88-90, FFP conceded that Voorde did not teach initial

heat treating, and relied on Hara's initial boiling/steaming (100°C+) to arrive at the invention of the '304 claims (Appx89-90). A clear combination was proposed:

> Thus, ***although the step of first heating, boiling, or steaming vegetables to kill germs was not explicitly stated in Voorde***, a POSITA would have found it obvious and routine to do, as evidenced by Hara.... The combination merely adds the known step of heating the vegetable to predictably kill germs…. So, ***after boiling the plant material as in Hara***, a POSITA would have found it obvious to let the plant material cool before adding starter culture, as instructed in Voorde.[1]

Appx90 (citations omitted). Now, contrary to the express language in its Petition, FFP urges it argued all along that Voorde taught the heat-treated limitation. If that were so, why was Hara even included in Ground I?

This Court should view the PTAB's analysis in light of the allegations in the Petition. *Sirona Dental Sys. GmbH v. Institut Straumann AG*, 892 F.3d 1349, 1356 (Fed. Cir. 2018). Contrary to FFP's *Sirona*-based arguments at FFP.Br.30, 42, 46, this was not a case of the PTAB not using the "exact words" of the Petition, but one of the PTAB ignoring FFP's concession that Voorde does not disclose the heat-treating step, reading the '304 patent claims far broader than FFP did, and finding that Voorde alone taught that step. Appx18-19. This improperly tainted and influenced its combination analysis, and violated the APA. Kerry.Br.38-40, 63.

---

[1] All emphasis is added herein unless otherwise noted.

Kerry's Brief clearly pointed out that the PTAB's 'Voorde alone' analysis was discussed at Appx18-19, clearly separated from the *alternative* ("Even if…") analysis of Voorde+Hara at Appx19-20. Kerry.Br.28-30. But in asserting there was no 'Voorde alone' discussion by the PTAB, FFP starts by citing to *all of* Appx18-20, blurring the very alternative analyses. FFP.Br.33-34.

FFP argues it did not concede that the critical heat-treating step is not disclosed in Voorde, despite the statement "***although the step of first heating, boiling, or steaming vegetables to kill germs was not explicitly stated in the Voorde***...." Appx90; FFP.Br.35; *see* Kerry.Br.13-14, 32-33. Further, the Petition clearly relied on Hara's initial boiling/steaming (100°C+) to fill in the missing subject matter (Appx89-90), including the unambiguous statement "***after boiling the plant material as in Hara***" (Appx90). This is the precise combination litigated below. Kerry.Br.12-15, 32-33.

At FFP.Br.35, FFP frames the issue in the Petition as one of timing only: whether "heat-treating the vegetable to reduce microbial load ***prior*** to adding the starter culture" (emphasis in original) would have been obvious. However, at Appx89-90 the Petition discussed details of Hara's Examples of boiling the vegetables, then immediately contrasted that against Voorde ("although the step of first heating, boiling, or steaming vegetables to kill germs was not explicitly stated in the Voorde, a POSITA would have found it obvious and routine to do, as

evidenced by Hara.… ***The combination*** merely adds the known step of heating the vegetable to predictably kill germs…" (Appx90)).  To the extent FFP now argues that Hara is only cited for *timing* of adding the starter culture rather than supplying initial boiling/steaming (100°C+), that theory is undermined by the text of the Petition; moreover, Hara says nothing about starter cultures or heating to reduce microbial load.  FFP's argument about timing simply makes no sense.

The Petition does reference Voorde's heating and partial sterilization of the medium.  FFP.Br.35, citing Appx89, which cites Voorde at Appx725.  However, that citation is in the context of Voorde's optional addition of starter culture.  *Id.* The Petition never stated that Voorde taught the claimed heat-treating step; instead, Hara was expressly cited for this step.  Appx89-90.  In Voorde, the killing of certain undesired microbes at 50-52°C is ***a by-product of its heating to stimulate*** the nitrate-to-nitrite conversion, but FFP read "heat treated" in the '304 claims as requiring Hara-type boiling/steaming and that was the focus of the IPR.

In short, the obviousness ground was never cast as "***Voorde alone*** or in view of Hara."  It was always "Voorde in view of Hara."  FFP cannot now duck from its concrete position as to how it read the '304 patent, and its black-and-white concession that Voorde did not heat-treat as per the '304 claims.

FFP cites aspects of its witness's testimony in support of its theories. FFP.Br.28-29, 35-37. But this uncredited testimony cannot change the FWD's flawed analysis, nor does it constitute substantial evidence.

FFP argues at FFP.Br.37-39 that the Briefs following the IPR's institution confirm that Voorde's heating was part of Ground I. However, FFP's Reply at pp.12-13 (Appx410-411) made crystal clear it read the '304 claims as starting with a "sterilized medium," consistent with Ground I following Hara's 100°C+ heating. *See* Kerry.Br.25.

The FWD determined the '304 claims were obvious, but markedly deviated from Ground I by finding that Voorde taught the critical heat-treating step—despite the Petition's unequivocal concession to the contrary. In short, at Appx18-19, the PTAB asserted a new theory of unpatentability based on Voorde alone, not in view of Hara as set forth in the Petition, before continuing to analyze the actual combination as an *alternative* ("Even if…") at Appx19-20. *See* Kerry.Br.28-30.

FFP's attempt at FFP.Br.41-46 to distinguish the authorities cited at Kerry.Br.33-36 is unavailing. FFP urges that, under *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1011 (Fed. Cir. 2023), the PTAB can make findings not advocated by the parties, but that is not the case where, as here, Petitioner (FFP) conceded that a primary reference (Voorde) does not teach a challenged claim limitation (heat-treating) and brought in a secondary reference (Hara) to supply the

missing disclosure, yet the PTAB found that the primary reference disclosed it. If Voorde taught the heat-treating step, why the need for Hara? Again, Hara says nothing about starter cultures, timing of their addition, or initial heat-treating to reduce microbial load.

This Court in *Emera-Chem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 859 F.3d 1341 (Fed. Cir. 2017) found that reliance on a prior art reference not asserted for meeting a particular limitation was error, even though the passage had been quoted in the petition and institution decision, in a different context. 859 F.3d at 1350-52; *see* Kerry.Br.14-15, 35. And, in *M&K Holdings, Inc. v. Samsung Elecs. Co., Ltd.*, 985 F.3d 1376, 1383-86 (Fed. Cir. 2021), this Court held that the PTAB erred in determining a claim was anticipated when the petitioner asserted only an obviousness combination; the ex-petition anticipation finding deprived the patent owner of notice and an opportunity to respond to the anticipation theory. *See* Kerry.Br.35-36. Both cases are directly on point.

Neither *Anacor Pharmaceuticals, Inc. v. Iancu*, 889 F.3d 1372 (Fed. Cir. 2018) nor *Genzyme Therapeutics Products Ltd. v. Biomarin Pharm. Inc.*, 825 F.3d 1360 (Fed. Cir. 2016), cited at FFP.Br.41, 45-46, involved the present facts where Petitioner read the challenged claims a certain way as to a key limitation, conceded the primary reference lacked that limitation, and relied on a secondary reference to purportedly fill that void.

Here, the PTAB's 'Voorde alone' unpatentability theory (Appx18-19) was not raised in the ID or at any time before the FWD (Kerry.Br.17-18, 28-30). *See Emera-Chem*, 859 F.3d at 1348, 1350-52. Therefore, the FWD's obviousness determination was reversible error because Kerry had no notice or opportunity to respond. *See In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380-81 (Fed. Cir. 2016). The PTAB's unilateral modification of Ground I using Voorde, *alone or in addition to Hara*, to purportedly meet the heat-treated limitation, was not the ground addressed by Kerry, but was a new ground of unpatentability "never presented by petitioner and not supported by record evidence." *Id.* at 1381.

## II. FFP Cannot Rectify The PTAB's Flawed 'Even if' Analysis

### A. Ground I Cited And Relied On Hara For Initial Heat-Treating

FFP's Brief asserts that Hara's initial 100°C+ heating is not actually part of Ground I; that Hara is only cited for the *timing* of heating; and that Voorde teaches the heat-treating step. FFP.Br.35-36, 62.[2] This rewrites the Petition. By its own admission, the PTAB improperly considered the actual ground in the Petition— Voorde+Hara—as an *alternative*, and its ex-Petition findings on Voorde alone tainted its analysis. Kerry.Br.29, 38-40. Indeed, having erroneously found that

---

[2] The Petition sets forth a specific combination, but FFP's brief obfuscates how or whether Hara is part of the combination. *Compare* FFP.Br.49(ll.1-3) ("a POSITA would have retained the initial preparation steps of heating the vegetables as done throughout Hara") *with* FFP.Br.62(ll.1-2) ("the Voorde and Hara embodiments did not need to be physically combined").

Voorde taught the key step, the PTAB concluded that the combination did as well. But in its cursory analysis on the *actual* combination (Appx19-20), with its foregone conclusion in hand, the PTAB failed to make findings on motivation to combine, failed to address substantive arguments and evidence demonstrating Voorde's clear teaching away, and used hindsight to recreate the prior art, all while making "findings" unsupported by substantial evidence.

In Ground I, FFP proposed significant modifications to the primary document, Voorde, based on disclosure of Hara and testimony to arrive at Kerry's claimed invention. No claim construction issue was raised in the Petition or thereafter as to the heat-treating step. The Petition read 'heat treating' in the '304 claims as requiring vegetable material initially sterilized at 100ºC+ temperatures, and this ground defined the IPR proceeding.

The actual Ground I asserted by FFP required *modifying* Voorde's process by: initially boiling/steaming (100°C+) the vegetable material, imported from Hara; allowing the *heat-treated* vegetable to cool to 50-60°C (not disclosed by either reference); and adding starter culture at that temperature range (50-60°C) (not disclosed by either reference). *See* Appx89-90; Appx410-412; Appx675-676(¶¶123-24). To be clear, Voorde's single sentence about optionally adding a starter culture is for use as a supplement to the plant's enzymes/microbes (Appx725(Voorde_p.6); Kerry.Br.23), and the PTAB found "Voorde discloses

adding this starter culture ***prior*** to heating to the medium." Appx20. FFP's stated

rationale for these modifications was "routine sanitization," relying on Hara's

disclosure of an initial heating by boiling/steaming/etc. to 100°C+ (which Hara

undisputedly performed for extracting vegetal juice, not reducing microbial load—

*e.g.*, Appx3511(Hara_5:13-14) (*see* Appx4573(n.4); Appx4574(n.5))). Appx89-

90. Hara never states that its initial extraction step was for the purpose of reducing

microbial load, because Hara discusses a separate, optional sterilization of its end

product. Appx3509(Hara_1:59-2:4); Appx7417-7418(¶¶39-41). However, the

PTAB previously confused Hara's disclosure in this regard (Kerry.Br.27-28), and

did so again in the FWD (Appx16).

FFP interpreted the heat-treating step in claim 1: "A POSITA would

understand that this claim [step] refers to blanching/heating/boiling/steaming the

vegetable material...." Appx88. In view of its Examples employing this technique,

Hara was cited as teaching this claim step. Appx89-90, citing Appx3509-

3510(Hara_3:14, 5:14, 5:48-49). Voorde contains no such disclosure, but warns

against boiling the vegetables. Appx725-726(Voorde_pp.6-7); Kerry.Br.21-23,

46-51; pp.21-25, *infra*.

The Petition relies on Voorde's single sentence of optional use of "starter

culture" *in addition to* the plant's natural enzymes and microbes, for reducing

nitrate to nitrite. Appx89, citing Appx725(Voorde). After discussing Hara's

boiling/steaming, the Petition states that Voorde did not disclose boiling the vegetables to reduce germs, but Hara's boiling would accomplish that. Appx90.

Thus, the Petition **concedes** that the heat-treated limitation is **not** disclosed in Voorde, and relies on Hara for that step. When the Petition says "after boiling the plant material as in Hara," how can FFP credibly assert that Hara's initial 100°C+ heating is not part of Ground I? It cannot.

When actual Ground I is considered, the PTAB's combination analysis is legally erroneous for multiple reasons.

### B. The Legal Deficiencies In The PTAB's Motivation To Combine Analysis Require Reversal

#### 1. FFP's Arguments On Rationale To Combine Are Not Responsive To Kerry's Arguments

The PTAB failed to articulate, let alone make explicit, a rationale for modifying Voorde in view of Hara in the manner of the Petition, as required under *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 418 (2007). *See* Kerry.Br.41-46. Instead, the PTAB simply assumes they are combinable, a particularly egregious error given Voorde's clear teaching away. *Id.*

Effectively conceding this error, FFP rewrites the FWD, relying extensively on portions of the record not discussed in the PTAB's analysis. FFP strays from its rationale in Ground I ("routine sanitization") and manufactures so-called "First"

12

and "Second" rationales, plucked from conclusory sentences of the FWD. *See* FFP.Br.47-59.

The conclusory language quoted by FFP is legally insufficient to establish *why* a POSA would have been motivated to modify Voorde in view of Hara in accordance with Ground I. *See* Kerry.Br.41-46, citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1322 (Fed. Cir. 2016) (quoting *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002)) ("the agency is obligated to 'provide an administrative record showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions.'").

FFP cites to no actual analysis and instead places heavy emphasis on the PTAB's *conclusion* for the "First" and "Second" rationales:

> *we conclude* that a person of ordinary skill in the art, seeking to reduce microbial load in a plant material prior to converting nitrate to nitrite, would have combined Voorde and Hara's disclosures in the manner FFP suggests. At the very least, the skilled artisan would have looked to Hara as evidence that pre-treatment using heat could be beneficial to reduce microbial load, a disclosure confirmed by Voorde.

Appx20; *see* FFP.Br.27; FFP.Br.52 (stating the "Second" rationale "was the same rationale discussed above with the 'addition'…").

*FFP's actual rationale* in Ground I for modifying Voorde in view of Hara is "*routine sanitization*." Kerry.Br.13, 20-22, 26, 45, 55-56. Remarkably, in arguing the "First" and "Second" rationales, FFP never mentions "routine sanitization." FFP.Br.47-59.

Thus, FFP's manufactured "rationales" are not responsive to Kerry's argument on appeal that the PTAB failed to explain *why* a POSA would have been motivated to modify Voorde in view Hara as in the Petition, because: (1) FFP's arguments are not based on its "routine sanitization" rationale in Ground I; and (2) FFP cannot cite to analysis in the FWD explaining *why* a POSA would have made the modification set forth in Ground I and is left quoting the PTAB's conclusion, which falls far short of actual analysis. *See Synopsis*, 814 F.3d at1322; *Cutsforth, Inc. v. MotivePower, Inc.*, 636 Fed. App'x 575, 578 (Fed. Cir. 2016) ("[t]he majority of the Board's Final Written Decision is spent summarizing the parties' arguments and offers only conclusory analysis of its own.").

### 2. *FFP's "First" Rationale is Not Legitimate, Inconsistent with the Petition, Unreasoned, and Contrary to the Record*

*First*, the PTAB's statement in its conclusion—"seeking to reduce microbial load in a plant material prior to converting nitrate to nitrite" (Appx20)—*comes from the '304 claims*, not from the prior art.[3] This alone is fatal hindsight. A limitation of the '304 claims cannot *itself* provide a POSA with a rationale to modify Voorde. *See* Kerry.Br.51-53; pp.26-27, *infra.*

---

[3] Claim 1 recites "the plant material is heat treated prior to addition of the organism so as to have a reduced microbial load." Appx623.

The PTAB also mischaracterizes Voorde in stating that "pre-treatment using heat could be beneficial to reduce microbial load, *as confirmed by Voorde*." Appx20. Voorde does not disclose pre-treatment, as *any reduction in microbial load is a **by-product** of Voorde's underlying process*—using the natural microbes/enzymes of fresh plant material for nitrate-to-nitrite conversion at non-sterilization temperatures (*e.g.*, heating up to 50-60ºC). *See* Appx725-726(Voorde_pp.6-7)). Rather than modify Voorde, a POSA would simply add starter culture at the beginning of Voorde's process.[4] Even the PTAB found: "Voorde discloses adding this starter culture ***prior*** to heating to the medium." Appx20. The key limitation of adding a conversion organism after heat-treating only comes from the '304 patent—a limitation contrary to conventional wisdom, and which provides a curing agent that gives meat products consistently unique and predictable flavor, smell, and/or color (Kerry.Br.8-10).

*Second*, Ground I unambiguously requires initially boiling/steaming (100ºC+) vegetables per Hara for "***routine sanitization***," followed by cooling to 50-60ºC at which temperature starter culture would be added for "stimulating the starter culture." Appx89-90. The Petition repeatedly relied on ***this rationale*** to

---

[4] Dr. Milkowski testified that a POSA following Voorde's process and optionally adding starter culture "would start with the raw vegetables, add the starter culture, and then start warming it up." Appx4471(128:14-129:5).

modify Voorde.  Kerry.Br.55-56(Finding-5); *see* Appx90 ("predictably kill germs") ("boil or heat a plant material to kill unwanted germs") ("after boiling the plant material as in Hara") ("would not have added the starter culture before boiling or steaming the vegetable"), Appx410-411(Reply.12-13) ("starting with a sterile medium" was "part of the Hara reference that the Petition combines with Voorde")).

Because Hara's initial heating is not for reducing microbial load (Kerry.Br.12-13, 21, 58("Finding-12")), FFP's rationale of initial sterilization at 100ºC+ does not come from Voorde or Hara, but rests on its witness's testimony regarding "routine sanitization" (Kerry.Br.20, 26).  That testimony was never credited or mentioned by the PTAB in support of its conclusions (Appx18-20).

*Third*, FFP's reliance on the PTAB's conclusion at Appx20 in support of its "First" rationale is unreasoned.

If 'Voorde alone' taught the heat-treated limitation of the '304 claims, then *why* did FFP include Hara in Ground I?  And *why* would a POSA have looked to Hara's initial heating to reduce microbial load when Hara says nothing about that? The answer is a POSA *would not have looked to Hara* and would have followed Voorde unmodified: heat vegetables *together with* optionally added starter culture to the stimulating temperature (50-60ºC).  The PTAB agreed.  *See* Appx20 ("Voorde discloses adding this starter culture *prior* to heating to the medium.").

FFP also cannot credibly rely on Hara *only* with respect to the *timing* of adding starter culture. FFP.Br.35. Hara is silent as to timing altogether, as it simply comminutes and/or boils vegetable material, never mentions starter culture, and provides no evidence that "pre-treatment using heat" could be beneficial to reduce microbial load as the FWD concluded at Appx20. Hara performs no pre-conversion of nitrate; has no need of a starter culture; and its initial heating was for extracting liquid from vegetables in the context of its own process. Kerry.Br.12, 21; Appx3511(Hara_5:13-14); Appx4572-4576. The only rationale proffered by FFP for considering Hara is "routine sanitization" by Hara's boiling/steaming (100ºC+). *This elevated temperature* drives FFP's modifications. But Voorde teaches away from this excessive heating (Kerry.Br.46-51, pp.21-25, *infra*); and both references teach sterilizing the *end product*—satisfying any need for "routine sanitization" without harming the starter culture before use (Kerry.Br.21, 24-26).

### 3. Full Sterilization Argued with respect to FFP's "Second" Rationale is Not a Legitimate Rationale and Lacks Reasoned Analysis by the PTAB

For its "Second" rationale, FFP adds to its "First" rationale:

> The Board's rationale for combining Voorde and Hara under a construction requiring full sterilization of the vegetable material was *the same rationale discussed above* with the "addition" that a POSITA would have relied upon Hara "for its disclosure of full sterilization by boiling, followed by cooling prior to the addition of a starter culture as disclosed in Voorde."

FFP.Br.52, citing Appx20.

This argument is fallacious. If one follows FFP's reasoning, FFP relies on its proposed modifications (sterilizing at Hara's temperatures, followed by cooling prior to adding starter culture) to also serve as the rationale for carrying out those very same modifications. ***FFP's circular reasoning*** conflates the "Second" rationale with its modifications to Voorde. It is self-evident that the proposed modifications to Voorde cannot *themselves* be relied on as the rationale for carrying out that modification.

In arguing substantial evidence supported full sterilization followed by cooling, FFP never cites to substantive analysis by the PTAB, but only to the PTAB's summary of the parties' positions and conclusory statements in the FWD. The balance of FFP's arguments are based on citations to the record not discussed by the PTAB, including testimony of its witness never credited by the PTAB. FFP.Br.52-59. This demonstrates a clear attempt to rewrite the FWD.

Specifically, and tellingly, FFP's only citations to the FWD are one citation to "Appx15-18" (Br.57, n.13), one citation to a sentence bridging Appx19-20 (Br.54), and several citations to Appx20 (Br.52-54).

1. At Appx15-18, the PTAB merely summarizes the prior art and the parties' arguments. "However, the PTAB cannot satisfactorily make factual findings and explain itself by merely 'summariz[ing] and reject[ing] arguments

without explaining why [it] . . . accepts the prevailing argument.'" *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1045-46 (Fed. Cir. 2017), citing *In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016); *see DSS Tech. Mgmt. v. Apple Inc.*, 885 F.3d 1367, 1375-77 (Fed. Cir. 2018) ("enumerating the parties' arguments" is not reasoned analysis).

2.      At the sentence bridging Appx19-20, the PTAB states "we disagree that this modification would be inconsistent with Voorde or destroy its intended purpose, as Kerry argues. PO Resp. 34-46." However, this single unexplained conclusion explicitly wipes out thirteen pages of Kerry's POR and supporting evidence, without any analysis explaining *why* initially sterilizing Voorde's vegetables would be consistent with Voorde, let alone discuss and distinguish Kerry's arguments and evidence. Again, the PTAB's failure to explain *why* it rejected one party's position and accepted the other party's position or otherwise reached its conclusion of obviousness is not reasoned analysis. *See NuVasive*, 842 F.3d at 1383; *Cutsforth*, 636 Fed. App'x at 578; *In re Lee*, 277 F.3d at 1342 ("the agency tribunal must present a full and reasoned explanation of its decision").

3.      FFP's citations to Appx20 are to the paragraph in the FWD that begins with "[f]or these reasons, *we conclude*…." And, in fact, this paragraph includes no more than conclusory statements without any citations to the record evidence. The PTAB's perfunctory analysis is clearly legally deficient. *Id*.

Further undermining the FWD is the PTAB's apparent reliance on Hara's optional heating for sterilizing its **end product** (Appx16), while the Petition expressly relies on Hara's optional **initial** heating for extracting liquid (Appx89-90) (Appx7417(¶¶39-40)).  In summarizing Hara, the PTAB never mentions that Hara's initial heating is for liquid extraction, without any mention of microbes or sterilization.  However, the PTAB specifically states that "Hara calls for sterilizing the liquid phase containing the water-soluble plant ingredients *immediately after its preparation*."  Appx16.  Therefore, the PTAB's obviousness conclusion relies on a post-process sterilization step not argued in the Petition.  Moreover, as Kerry repeatedly pointed out, a POSA concerned about "routine sanitization" would simply sterilize Voorde's end product.  Kerry.Br.24 (citing Appx7417-7418(¶¶40-41)), 26.

### 4.  *Kerry Did Not Raise a Claim Construction Issue*

FFP incorrectly asserts that Kerry belatedly raises an issue of claim construction with regard to the heat-treated limitation.  FFP.Br.50-52.  However, Kerry never raised any claim construction issue.  *See* Kerry.Br.29, n.7; 55 ("Finding-3").  Kerry litigated the IPR based on FFP's modifications to Voorde and the stated rationale in Ground I—initially boiling/steaming Voorde's vegetables (100ºC+) for "routine sanitization."  *See* pp.9-12, *supra.*  FFP cannot backtrack and reformulate the very ground it delineated in its Petition, based on a

claim construction it never raised and which cannot be squared with the record below, by urging that Voorde's stimulating temperature of 50-60ºC meets the heat-treated limitation.

### C. Voorde's "Teaching Away" Is Clear And Dispositive

FFP argues the PTAB correctly determined that the proposed modification (heating the vegetables to 100°C+ instead of Voorde's 50-60°C) would not destroy Voorde's intended purpose and thus would not constitute teaching away, citing Appx19-20. FFP.Br.52. But the PTAB never explained *why* heating "to 100°C instead of the 50-60°C preferred by Voorde" (FFP.Br.52) would not have made Voorde's process unsuitable for its intended purpose, when it is undisputed that 100°C+ heating would destroy the natural microbes and enzymes Voorde requires. *See* Kerry.Br.41-46.

FFP next asserts there is no "teaching away" because "Voorde's heat-treating to temperatures in the 50-60°C range is a ***preference***, not an unwavering requirement … [n]or does Voorde instruct the POSITA never to heat the vegetables to 100°C," citing Voorde at Appx726 ("Preferably, the heating is not higher than 80°C…"). FFP.Br.58 (emphasis in original).

The first point is a red herring, because Kerry never asserted that heating to 50-60°C is "an unwavering requirement" of Voorde.

Second, FFP asserts that "expressing a preference, even a strong one, is not 'teaching away.'" *Id.*, citing *In re Mouttet*, 686 F.3d 1322, 1334 (Fed. Cir. 2012). But *Mouttet* does not control here. The Falk reference at issue in *Mouttet* merely disclosed alternative designs, but lacked the negative consequence language of Voorde and the cases finding a teaching away relied on at Kerry.Br.46-51. Mouttet relied on the following passage to assert Falk teaches away from electrical circuitry:

> There is a fundamental difference between optical circuits, in which the information carriers are photons, and electronic circuits, where the carriers are electrons…. [I]n optical devices, there exist interconnect possibilities that do not exist with electronic hardware, in particular, interconnected parallel architectures which permit digital arithmetic and logic operations to be performed in a completely parallel, single step process. After the inputs are switched on, the output appears in the time it takes a photon to transit the device. No faster computation time is possible.

686 F.3d at 1333.

As the *Mouttet* court made clear, mere disclosure of alternative designs—optical circuits and electrical circuits—is not a teaching away from the electrical design just because the optical one could perform faster. *Id.* at 1333-34, citing *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994). However, *Gurley* contrasted the alternative design cases with the classic teaching away cases, such as *Spectralytics* (Kerry.Br.47): "[a] reference may be said to teach away when a [POSA], upon reading the reference, would be discouraged from following the

path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *Gurley*, 27 F.3d at 553.

This is clearly not a case of the prior art disclosing alternative designs and a preference for one over the other. Rather, this is Voorde telling the POSA *not to heat to 100°C because to do so would defeat its clear goal of using the natural enzymes and microbes for conversion*—a path divergent from that taken in the '304 patent. In response to FFP's assertion that addition of starter culture could replenish natural microbes killed by using Hara's 100°C+ initial heating (FFP.Br.59), it is undisputed that the text of Voorde only discloses starter culture as an *addition* to the natural flora, not as a replacement. Kerry.Br.23("e"), 29-30, 58("Finding-11"); Appx4598-4599(¶116). Again, FFP is forced to distort the actual reference disclosure.

FFP argues that "Voorde does not teach away from heating to higher temperatures under all circumstances," and that "Voorde neither describes higher temperatures (*e.g.*, 100 °C) as inferior, nor disparages or criticizes higher-temperature alternatives in a way that would lead POSITAs away from trying them." Kerry.Br.59. This is plainly contradicted by the text of Voorde itself, as FFP essentially **strikes out** the critical portion of the sentence: "Preferably, the heating is not higher than 80 °C, and more preferably not higher than 70 °C, ~~in order not to excessively reduce the enzymatic and microbiological conversion~~

***processes necessary for the conversion of nitrate into nitrite***."

Appx726(Voorde_p.7) (strikeout added).

Indeed, FFP has no response to Kerry's controlling authorities, which show the reference teaches away if it expresses a general preference coupled with language which criticizes, discredits, or otherwise discourages investigation into the invention claimed. Kerry.Br.47-51. Here, the facts squarely line up with such authorities, as shown below:

| *Chemours Co. FC, LLC v. Daikin Indus.*, 4 F.4th 1370, 1377 (Fed. Cir. 2021) | Teaching against using high fluorination temperatures, because doing so "can result in a broadening of the molecular weight distribution and negatively effect [sic] performance." | Result: Teaching away |
|---|---|---|
| *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018) | "…it is undisputed that adding a fuel tank under one of the seats … render[ed] the vehicle less stable, which would run contrary to one of Denney's stated purposes." | Result: PTAB failed to conduct proper teaching away analysis |
| *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2016) | "… Puno does not merely express a general preference for pedicle screws having a 'shock absorber' effect. Rather, Puno expresses concern for failure and states that the shock absorber feature 'decrease[s] the chance of failure of the screw or the bone-screw interface' because 'it prevent[s] direct transfer of load from the rod to the bone-screw interface.'" "…the addition of Anderson's compression member to Puno's device would have eliminated or reduced the device's desired 'shock absorber' effect, which then 'would increase the | Result: Teaching away |

24

| | chance that screw and bone-screw interface failure would occur.'" | |
|---|---|---|
| Voorde, Appx726(Voorde_p.7) | "…in order not to excessively reduce the enzymatic and microbiological conversion processes necessary for the conversion of nitrate to nitrite." | Should be a teaching away |

FFP also ignores the position at Kerry.Br.49-50 that the present case is further aligned with *Chemours*, since the proposed modification of Voorde would alter its fundamental process of relying on the endogenous microbes/enzymes for converting nitrate.

Voorde clearly qualifies as a teaching away under this Court's framework. In contrast, FFP's lone case, *Mouttet*, contained no explicit discouragement or negative result—just two alternatives, one of which worked faster than the other.

Like the PTAB, FFP also has no response to Kerry's position that Voorde *confirms* the teaching away by its own multiple citations to and discussions of Hara. Appx720-723(Voorde_pp.1-4); Kerry.Br.22-23, 51. If initial heating to 100°C+ as in Hara was so obvious and advantageous to a POSA, why didn't Voorde describe it? Voorde clearly understood Hara, but chose not to use Hara's initial boiling/heating despite Voorde's description of the same initial vegetable comminution steps as Hara. The only logical inference is that Voorde purposely excluded Hara's boiling/steaming (100ºC+) (Appx7420-7421(¶¶46-48)), and instead provided an explicit direction ***not to excessively heat***.

**D.     FFP Concedes That Hindsight Tainted The Combination Analysis**

FFP failed to even address the position that the PTAB's obviousness determination improperly used hindsight to reconstruct the '304 claims. Kerry.Br.51-53(Argument §_II.E).  Indeed, the term 'hindsight' does not appear in FFP's brief.

FFP has no response to the unrefuted position that neither reference discloses seeking to reduce microbial load in a plant material prior to converting nitrate to nitrite; instead, this objective comes straight from the '304 claims.  *Id.* Thus, FFP implicitly concedes this putatively dispositive point.  *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994) (the failure to reply to an adversary's point "waives, as a practical matter anyway, any objections not obvious to the court to specific points urged" by its adversary, and "can have serious consequences").  Further, while the 4th Circuit noted at least one contrary authority, it found that "an appellee's wholesale failure to respond to a conspicuous, nonfrivolous argument in the appellant's brief ordinarily constitutes a forfeiture."  *W. Va. Coal Workers Pneumoconiosis Fund v. Bell*, 781 Fed. Appx. 214, 226 (4th Cir. 2019), citing *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016).

In *Polaris*, this Court observed:

"the prejudice of hindsight bias" often overlooks that the "genius of invention is often a combination of known elements which in hindsight

26

seems preordained." … We have also recognized that, "[w]hen the art in question is relatively simple, as is the case here, the opportunity to judge by hindsight is particularly tempting."

882 F.3d at 1068 (citations omitted). Here, the PTAB succumbed to that very temptation, starting with a key inventive concept of the '304 patent—heat treating to reduce the microbial load in a plant material prior to converting nitrate to nitrite—before finding that Voorde and Hara could allegedly be combined to achieve this goal. Appx20; Kerry.Br.51-52. The law is clear that an inventor's own disclosure cannot be a "blueprint for piecing together the prior art to defeat patentability—the essence of hindsight." *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1553 (Fed. Cir. 1983) ("[t]o imbue one of ordinary skill in the art with knowledge of the invention in suit, when no prior art reference or references of record convey or suggest that knowledge, is to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher."). Yet, that is exactly what the PTAB did here. Its use of hindsight was legal error, was not refuted, has been acquiesced in by FFP, and further contributed to the PTAB's legally inadequate motivation to combine analysis.

### E. Specific Findings Stand Unsupported

Kerry generally stands by its opening brief (Kerry.Br.53-62), as FFP largely refers back to its prior arguments addressed above, but notes:

27

Finding-8: FFP incredibly asserts that, "FFP did not concede that Voorde did not teach heat-treating." Kerry.Br.61. This position is belied by the Petition's explicit contentions that "although the step of first heating, boiling, or steaming vegetables to kill germs was not explicitly stated in the Voorde..." followed by "after boiling the plant material as in Hara...." Appx90; Kerry.Br.32-33, 13-14.

Finding-9: This is another example of FFP rewriting the Petition, asserting the Petition pointed out that Voorde teaches partial sterilization, citing Appx89. FFP.Br.61. But as established at Kerry.Br.14, 32-37 and pp.3-12 above, the Petition never cited Voorde as disclosing the heat-treating step.

Finding-11: FFP apes the PTAB's erroneous reading of the clear text of Voorde (FFP.Br.62), whose one sentence on the optional additional use of starter culture does not suggest *replacement* of microbes destroyed through Hara's heating, but only its *addition* to the endogenous vegetable flora. Kerry.Br.58; Appx725(Voorde_p.6). The PTAB's plainly inaccurate characterization of a primary reference cannot be a finding supported by substantial evidence.

Finding-12: Despite FFP's complaints at FFP.Br.62, the fact remains that the PTAB's finding on motivation lacks substantial evidence, because no reason or rationale for doing so is provided, much less a reasoned discussion of the evidence. Kerry.Br.41-46, 58.

### III. THIS COURT SHOULD NOT CONDONE THE PTAB'S APA FAILURES

In response to Kerry's showing that the PTAB's decision was based on legal errors and findings unsupported by substantial evidence, fell well short of reasoned decision-making, was arbitrary and capricious, and failed to meet the standards imposed by the APA (Kerry.Br.62-65), FFP makes three arguments at FFP.Br.65-66.

1. FFP argues that the PTAB did not adopt a 'Voorde alone' ground, but FFP does not address (a) the critical concession in the Petition that Voorde did not teach heat-treated plant material as recited in the '304 claims: "***although the step of first heating, boiling, or steaming vegetables to kill germs was not explicitly stated in the Voorde***..." (Appx90; Kerry.Br.32-33, 13-14); or (b) that the Petition cited Hara's boiling/steaming (100°C+) to make the combination. Appx89-90; Kerry.Br.32-33. Given actual Petition Ground I (Kerry.Br.12-15, 19-21; pp.3-12, *supra*), there can be no serious dispute that the FWD asserted a new theory based on Voorde alone, purporting to rely on Voorde's 50-52°C heating as a disclosure of the heat-treating step to reduce the microbial load (Appx18-19). This new theory in the FWD was a "marked deviation" from the Petition's theory and evidence (Kerry.Br.31-37, 62), and thus an APA violation as Kerry was deprived of notice and the case was over. *M&K Holdings*, 985 F.3d at 1383-86; *Emera-Chem*, 859 F.3d at 1348-51.

2.     FFP asserts that the PTAB did provide an explanation and analysis of why a POSA would have been motivated to combine the disclosures of Voorde and Hara.  While alleging that there was a five-page analysis at Appx16-20 (FFP.Br.65), that overreach sweeps in the PTAB's summaries of the parties' positions, which are not the PTAB's analyses or reasoning.  As noted at Kerry.Br.44, this Court has rejected FFP's position: "it is not adequate to summarize and reject arguments without explaining why the [PTAB] accepts the prevailing argument." *NuVasive*, 842 F.3d at 1383; *see also Cutsforth*, 636 Fed. App'x at 578.  Here, Appx16-18 summarizes parties' positions, while Appx19-20 is a conclusory analysis on motivation to combine with minimal evidence cited.

Moreover, this is not a case of the PTAB performing a substantive analysis but failing to address one argument offered by a party.  FFP.Br.65-66, citing *Yeda Research Dev. Co. v. Mylan Pharms Inc.*, 906 F.3d 1031 (Fed. Cir. 2018).  Here, there was a wholesale lack of explanation and reasoning supporting the conclusion of motivation to combine; hence, a violation of APA standards.  *Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 124 (Fed. Cir. 2022); *Princeton Vanguard, LLC v. Frito- Lay North Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015); Kerry.Br.63-64.

3.     FFP alleges that 'teaching away' was addressed by the PTAB.  FFP.Br.66.  This is also inaccurate.  Pointing to a conclusion in the FWD at Appx19-20 that merely cites pages of Kerry's brief below ("PO Resp. 34-46") is

not an assessment of the evidence, nor an explanation as to why it is insufficient. Kerry.Br.41.  Given the extensive briefing and unrebutted evidence on this issue, the PTAB's refusal to even engage with Kerry's undisputed evidence that Voorde teaches away (Kerry.Br.19-24, 47-51) is yet another violation of the APA. *Provisur Techs*., 50 F.4th at 123-24.

Further, FFP's reference at Br.66 to Appx20 and Dr. Milkowski's testimony is out of place; when to add starter culture is not relevant to Voorde's teaching away from Hara's 100°C+ initial heating.  *See* Kerry.Br.19-24, 47-51; pp.21-25, *supra*.

In sum, there can be no doubt that on multiple issues the FWD fails to "take account of all the evidence of record, including that which detracts from the conclusion the agency ultimately reaches."  *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017).  It also fails to "'present a full and reasoned explanation of its decision,'" "supported by the agency record, and explain its application of the law to the found facts."  *In re Lee*, 277 F.3d at 1342.

## CONCLUSION

The PTAB's judgment should be reversed.

January 19, 2024

Respectfully submitted,

/s/ Mark Boland
Mark Boland
Raja N. Saliba
SUGHRUE MION, PLLC
2000 Pennsylvania Ave., NW
Washington, D.C. 20006
Tel: (202) 293-7060
Fax: (202) 293-7860
mboland@sughrue.com
rsaliba@sughreu.com

*Counsel for Appellant Kerry Group Services
International Ltd.*

# CERTIFICATE OF SERVICE

I hereby certify that, on January 19, 2024, I electronically filed the foregoing

Appellant Kerry Group Services International Ltd.'s Reply Brief with the Clerk of

the United States Court of Appeals for the Federal Circuit using the CM/ECF

system, which will send notice of such filing to all registered CM/ECF users.


/s/ Soo Jin Hur
Soo Jin Hur

## CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b), this brief contains 6,905 words.

This brief complies with the typeface and type style requirements because it was prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14pt Times New Roman.

January 19, 2024

/s/ Mark Boland
Mark Boland
*Counsel for Appellant Kerry Group Services International Ltd.*